UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAY SHIN, | |
| Plaintiff, | CASE NO. 2:21-CV-1524-DWC |
| v. | ORDER ON PARTIAL MOTION FOR SUMMARY JUDGMENT |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on Defendant Allstate Insurance Company's Motion for Partial Summary Judgment on Plaintiff's Extracontractual IFCA, CPA, and Bad Faith Claims. Dkt. 27.[1] Having considered the parties' briefing and the relevant record, the Partial Motion for Summary Judgment (Dkt. 27) is granted. Plaintiff Jay Shin's IFCA, bad faith, and CPA claims are dismissed with prejudice.

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 10.

## I.      Background

In the Complaint, Shin alleges that he was injured in a motor vehicle accident on May 2, 2019 ("the accident"). Dkt. 1-1. On the date of the accident, Shin was insured by Allstate and his policy included underinsured motorist coverage ("UIM"). *Id*. at ¶¶ 3.6, 3.9. The at-fault-driver was uninsured, and Shin made a claim to Allstate for payment of his UIM policy limits and a waiver of the $10,000 personal injury protection ("PIP") limit paid by Allstate. *Id*. at ¶¶ 3.10-3.11. Shin contends Allstate unreasonably refused to compensate him for the damages he sustained in the accident. *See id.* at ¶ 3.13. As a result, Shin alleges Allstate is liable under theories of breach of contract and bad faith. *Id*. at ¶¶ 4.1-5.4. He also alleges Allstate violated Washington's Insurance Fair Conduct Act ("IFCA") and Washington's Consumer Protection Act ("CPA"). *Id*. at ¶ 6.1-7.5.

Allstate filed the Partial Motion for Summary Judgment on April 27, 2023, seeking dismissal of Shin's bad faith, IFCA, and CPA claims. Dkts. 27, 28 (supporting evidence). Shin filed his Response on May 15, 2023. Dkts. 30, 31 (supporting evidence). On May 19, 2023, Allstate filed its Reply. Dkts. 32, 33 (supporting evidence). The parties did not request oral argument and the Court finds this matter can be resolved on the record without oral argument.

## II.     Discussion

A.  Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

B. Evidence

i. *The Collision*

The record shows the vehicle Shin was driving was rear-ended by another vehicle on May 2, 2019. *See* Dkt. 28-1 at 2. The accident report states that Shin and the at-fault-driver were stopped at a red light. *Id*. at 2-3. When the at-fault-driver was setting his soda down, he heard a honk and thought someone was telling him to drive; he took his foot of the gas and rear-ended Shin. *Id*. The at-fault-drive stated his "speed was probably barely 5 mph." *Id*. at 3. The officer at the scene of the accident did not observe damage to either vehicle. *Id*. Shin complained of head and back pain at the scene and was evaluated by the fire department. *Id*. at 2.

Shin reported to Allstate after the collision he had a headache, dizziness, and nausea. Dkt. 28-1 at 42. He also reported whiplash and that his head slammed against the headrest of his vehicle. *Id*. On May 24, 2022, after this lawsuit was initiated, Shin testified he was at a complete stop when the collision occurred and the car behind him "slammed" into his car. Dkt. 31-2 at 14-15, Shin Depo. He did not hit the car in front of him and thought the impact may have pushed his

1    car forward "a little bit." *Id*. at 15. Shin said he did not know how fast the car that hit him was

2    going, but his head slammed back against the headrest and he had whiplash. *Id*. at 16. Shin had

3    noticeable pain in his back. *Id*. at 9. He had a headache, dizziness, and nausea. *Id*. Shin's back

4    pain reduced after the first several weeks; he began experiencing sciatic pain a couple months

5    later. *Id*. Shin testified that prior to the accident Dr. Irene Young suggested a little bit of physical

6    therapy for his complaints of back pain, but it was his impression that prior to the accident Dr.

7    Young said Shin's back was okay. *Id*. at 12.

8           ii.   *Medical Evidence*

9           The medical evidence shows, the day before the accident, on May 1, 2019, Shin was

10   treated for low back pain. Dkt. 31-1 at 1. At that appointment, Shin complained of back pain that

11   was a pain level of 3-7 out of 10. *Id*. He complained of a grinding feeling and "an 'impingement'

12   cramping tightness." *Id*. Plaintiff was diagnosed with right lumbar paresthesia, right lumber

13   segmental dysfunction, Tl scoliosis, lumber degenerative disc disease, and history of liver

14   transplant. *Id*. at 4. The provider, Dr. Irene Young, wanted further x-rays and noted the next step

15   would be physical therapy. *Id*. The treatment notes state Shin and the provider "discussed several

16   treatment options for [Shin's] back pain including the option to do nothing." *Id*. The treatment

17   notes also indicate Shin had been seen for back pain three to four months prior and physical

18   therapy was recommended. *Id*. Shin did not try physical therapy at that time. *Id*.

19          Shin was treated on June 21, 2019 by Matthew Jensen, D.C. for complaints related to the

20   motor vehicle accident. Dkt. 31-5. Dr. Jenson opined that the collision caused Shin's injuries and

21   recommended five weeks of chiropractic care and four weeks of massage therapy. *Id*. at 2-3; *see*

22   *also* Dkt. 31-13 (April 1, 2020 letter from Dr. Jenson stating Plaintiff's current injuries were

23   from the motor vehicle accident). Shin had back surgery on July 7, 2020. *See* Dkt. 31-7.

24

1    After this lawsuit was initiated, during an August 17, 2022 deposition, Dr. Young stated

2    Shin had underlying degenerative changes that she thought were "lit up by the accident." Dkt.

3    31-3 at 5, Young Depo. She opined that Shin would not necessarily experience increased back

4    pain absent the car accident. *Id*. She opined that the accident "likely irritated things." *Id*. at 9.

5    On March 9, 2023, Dr. Amir Abdul-Jabbar, Shin's treating surgeon, testified that he did

6    not know what caused Shin's lumbar disk herniations and could not rule out that the herniations

7    were caused by trauma. Dkt. 31-16 at 5. Dr. Abdul-Jabber stated he "could not rule it in or rule it

8    out" that Shin's symptoms and pain were caused by the car accident, but it was possible the

9    treatments Shin received were related to the accident. *Id*. at 6-7.

10    iii.    *Allstate's Claim Handling*

11    Allstate opened a claim file on May 2, 2019, the date of the accident. Dkt. 28-1 at 49. On

12    May 7, 2019, Allstate sent Shin PIP/Med Pay forms and instructions for coverage. *See id*. at 46.

13    Allstate then contacted Shin by email and sent a letter on May 10, 2019, asking Shin to call

14    Allstate to discuss the accident. *Id*. at 45-46. Shin emailed Allstate back on May 11, 2019, and

15    stated he would try to be in contact sometime the next week and provided Allstate with his

16    attorney's name. *Id*. at 44. Allstate emailed Sinn on May 13, 2019, requesting Shin call to

17    provide a verbal statement. *Id*. The claim file indicates Allstate obtained additional information

18    related to Shin's claim, such as a police report and information regarding the at-fault-driver. *See*

19    *id*. Allstate contacted Shin again at the end of May 2019 regarding his claim status. *Id*.

20    On June 4, 2019, Allstate spoke with Shin and Shin provided a recorded statement. Dkt.

21    28-1 at 42-43. The claim file notes states that Shin would call Allstate when he was ready for

22    repairs on his vehicle and "no follow up necessary." *Id*. at 43.

23

24

Allstate emailed with Shin's attorney on July 2, 2019, and spoke with Shin's attorney on July 3, 2019; counsel notified Allstate that Shin would contact Allstate "when ready." Dkt. 28-1 at 41. On July 5, 2019, Allstate set the PIP/Med Pay Offset at $10,000 and estimated the general damages would be $10,000 and made a starting reserve amount of $10,000. Dkt. 31-9 at 1. Allstate's claim file notes state that Allstate was leaving the reserves "as is" but might adjust in the future depending on the time frame and duration of care. *Id*. at 2. A July 2020 claim file note states the PIP of $10,000 had been exhausted and the property damage was less than $1,000. Dkt. 31-10 at 4. Allstate increased the reserve to $165,000 after Shin's counsel contacted Allstate on July 21, 2020, and informed Allstate that Shin had back surgery related to injuries suffered in the collision and anticipated making a policy limits demand. Dkt. 33, Andrade Dec., ¶ 9. The reserve was increased solely on the information from Shin's counsel and the "case reserve was not based on or supported by medical records, medical billing, or expert opinions." *Id*.

Allstate paid $ 889.63 for the repairs to Shin's car in September of 2019. Dkt. 28-1 at 13. A letter dated October 8, 2019, showed that Allstate had paid for Shin's medical bills received through October 3, 2019, which was $10,000 in PIP. *Id*. at 11.

In September of 2020, Allstate's claim file notes indicate Shin's case was being referred to the home office due to the injury claimed, loss reserves currently on file, and potential exposure that exceeded local authority guidelines. Dkt. 31-10 at 1. The file notes indicate Allstate would need a biomechanical expert to determine the mechanism for injury because it was a minor impact and Shin was alleging surgery was warranted as a result of the impact. *Id*.

On January 21, 2021, Joseph Andrade, the Allstate claim manager handling Shin's case, contacted EFI Global, Inc. and requested EFI "examine file information and photographs in order to evaluate the injury potential of a rear-end collision in which the front of a 1993 Accord

1 | 4-door sedan struck the rear of a 2017 Mazda 3 4-door hatchback." Dkt. 28-1 at 56. EFI issued a

2 | Biomechanical Report on March 1, 2021. *Id*. at 55-59. EFI determined the rear impact velocity

3 | change imparted to the Mazda 3 (Shin's vehicle) was calculated to be 6-8 mph. *Id*. at 59. EFI

4 | also concluded that a rear impact velocity of this magnitude would be sufficient to produce the

5 | potential for soft tissue injuries. *Id*.

6 |        On March 5, 2021, Dr. Brendan Masini, M.D. authored a report outlining Shin's medical

7 | treatment related to his lower back pain and stating he determined Shin had conditions or injuries

8 | of degenerative disc disease, particularly at L5-S1 where Shin was noted to have facet

9 | arthropathy with grade 1 anterolisthesis and formation of the synovial cyst. Dkt. 28-1 at 26-29.

10 | Dr. Masini also noted Shin was postoperative from decompression of the L5-S1 level as of July

11 | 2020. *Id*. at 29. Dr. Masini stated he did not find Shin's current complaints to be solely

12 | attributable to the May 2, 2019 car accident. *Id*. He opined Shin's complaints were related to his

13 | prior condition, which was the natural progression of Shin's pre-existing lumbar degenerative

14 | disease. *Id*. Dr. Masini also opined that the mechanism of injury described in the records did not

15 | "objectively demonstrate change in [Shin's] pre-existing disease course following the motor

16 | vehicle accident" and he did not find the documentation supported a causal relationship between

17 | the reported injuries and the accident. *Id*. at 30.

18 |        On January 29, 2021, Allstate received Shin's demand for policy limits. Dkt. 28-1 at 52.[2]

19 | Allstate continued to investigate Shin's UIM claim and relied on all the available information,

20 |

21 | _____

22 |    [2] In the demand letters, Shin's attorney states Dr. Peter Meinhofer, D.C. evaluated Shin on June 21, 2019.
*See* Dkts. 31-11, 31-13. The record does not appear to include any treatment notes or opinions authored by Dr.

23 | Meinhofer. Rather, Dr. Meinhofer's opinion appears to be the same as Dr. Jensen, who did treat Shin on June 21, 2019 and formed the opinions attributed to Dr. Meinhofer. *See* Dkt. 31-5. While the Court would find this is a typographical error, Shin's counsel appeared to direct Allstate to find Dr. Meinhofer's opinion was supported by Dr.

24 | Jenson's opinion. *See* Dkt. 31-13 at 4.

including but not limited to, medical records, medical billing, the biomechanical report, and

records review by Dr. Masini, in reaching its claim valuation. Dkt. 33, Andrade Dec., ¶ 11.

Allstate valued Shin's claim with a gross value range of $12,835.54-$15,835.5, which included a

PIP offset and *Hamm* fees.[3] *Id*. On March 11, 2021, Allstate offered to resolve the claim. *See*

Dkt. 31-12. Allstate concluded that it was questionable whether any of the treatment was related

to the accident or was from pre-existing conditions. *Id*. Allstate offered Shin $19,277.77 plus

Hamm fees, which accounted for five months of treatment for a soft tissue injury and an

additional $7,000 in general damages. *Id*.

In response to Allstate's settlement offer, Shin's counsel sent Allstate a letter on August

19, 2021. Dkt. 31-13. Shin's counsel outlined Shin's position on his medical treatment and its

relationship to the accident and stated that a payment of policy limits of $250,000 with a waiver

of any PIP offset was the only appropriate response. *Id*. Shin's counsel stated Shin would be

filing suit if policy limits were not immediately tendered to Shin. *Id*.

Allstate requested an addendum to the Record Review of Jay Shin. *See* Dkt. 31-14. Dr.

Masini stated, "It is my medical opinion that the additional documents do not change the findings

of my prior record review and prior expressed opinions in that report." *Id*. at 3.

Shin initiated this lawsuit in King County Superior Court on November 3, 2021. Dkt. 1-1.

C.  Bad Faith and Insurance Fair Conduct Act

Allstate asserts Shin's bad faith and IFCA claims should be dismissed. Dkt. 27. Shin

contends Allstate's conduct was unreasonable because Allstate (1) failed to conduct a prompt

---

[3] *Hamm* fees "require a PIP insurer 'to share pro rata in the attorney fees incurred by an injured person when the recovery benefits the PIP insurer.'" *Heide v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1104, 1106 (W.D. Wash. 2017) (quoting *Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wash.2d 643, 647, 272 P.3d 802 (2012)); *see also Hamm v. State Farm Mut. Auto. Ins. Co.*, 151 Wash.2d 303 (2004).

1   and reasonable investigation; (2) failed to effectuate a prompt and equitable settlement; (3)

2   compelled Shin to litigate to recover adequate compensation; and (4) denied payment of benefits

3   for Shin's new back injuries and exacerbated pre-existing conditions. Dkt. 30 at 15-17. Shin,

4   therefore, argues Allstate's conduct constitutes bad faith and violates IFCA. *Id.*

5          An insurer has a duty of good faith to its policyholder and violation of that duty may give

6   rise to a tort action for bad faith. *Truck Ins. Exch. v. Vanport Homes, Inc.,* 147 Wash.2d 751, 765

7   (2002). Claims by insureds against their insurers for bad faith are analyzed applying the same

8   principles as any other tort: duty, breach of that duty, and damages proximately caused by any

9   breach of duty. *See Safeco Ins. Co. v. Butler*, 118 Wash.2d 383, 388 (1992). A policyholder

10  asserting bad faith bears a heavy burden, and such a claim is not easy to establish. *Overton v.*

11  *Consolidated Ins. Co.*, 145 Wash.2d 417, 433 (2002). The insured must show that the insurer's

12  breach of the insurance contract was "unreasonable, frivolous, or unfounded." *Id.* The

13  insurer must have "no reasonable justification" for its evaluation of the claim. *Starczewski v.*

14  *Unigard Ins. Grp.*, 61 Wash.App. 267, 810 P.2d 58, 62 (1991).

15         An insurer acts in bad faith when it denies coverage based upon mere suspicion and

16  conjecture, fails to conduct a good faith investigation of the facts before denying coverage, or

17  denies coverage based on a supposed defense that a reasonable investigation would have proved

18  to be meritless. *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig,* 114 Wash.2d 907, 917

19  (1990). "The insured may present evidence that the insurer's alleged reasonable basis was not the

20  actual basis for its action, or that other factors outweighed the alleged reasonable basis." *Smith v.*

21  *Safeco Ins. Co.*, 150 Wash.2d 478, 78 P.3d 1274, 1278 (2003) (en banc). However, an insurer's

22  conduct in litigation, after being sued for bad faith, is not a proper basis for a claim of bad faith.

23  *See Lock v. American Family Ins. Co.*, 12 Wash. App. 2d 905 (2020).

24

1    IFCA provides that any "first party claimant to a policy of insurance who is unreasonably

2    denied a claim for coverage or payment of benefits by an insurer may bring an action ... to

3    recover the actual damages sustained." RCW 48.30.015(1). However, "IFCA does not create an

4    independent cause of action for regulatory violations." *Perez-Crisantos v. State Farm Fire &*

5    *Cas. Co.*, 187 Wash.3d 669, 684 (2017). An "insured must show that the insurer unreasonably

6    denied a claim for coverage *or* that the insurer unreasonably denied payment of benefits." *Id.* at

7    683. A determination of whether an offer effectively denies an insured the benefits of the

8    insurance policy should focus "primarily on what [the insurer] knew or should have known at the

9    time the offer was made." *See Morella v. Safeco Ins. Co. of Ill.*, 2013 WL 1562032, at *3-4

10   (W.D. Wash. Apr. 12, 2013) ("Where an insurer pays or offers to pay a paltry amount that is not

11   in line with the losses claimed, is not based on a reasoned evaluation of the facts ... and would

12   not compensate the insured for the loss at issue, the benefits promised in the policy are

13   effectively denied.").

14   First, Shin asserts Allstate did not conduct a reasonable investigation. Dkt. 30. Shin

15   contends that Allstate made an unreasonably low settlement offer despite an internal claim

16   valuation of $175,000[4] and having access to hundreds of medical records. *Id.* at 15. Shin also

17   argues Allstate made no effort to investigate, for example, how Shin's liver complications

18   addressed his ability to deal with pain after the accident. *Id.*

19

20

21   _____

22   [4] Shin contends the reserve was set at $175,00. *See* Dkt. 30. Allstate submitted evidence showing the
     reserve was increased to $165,000 after Allstate received Shin's counsel's July 21, 2020 email. Dkt. 33, Andrade

23   Dec., ¶ 9. The claim file indicates the net reserve was $165,000, which was a gross reserve of $175,000 less the
     $10,000 in PIP. *See* Dkt. 31-10 at 4. The Court finds Shin has not disputed Allstate's showing that the applicable
     reserve amount is $165,000. However, any dispute between the reserve amounts is not material to this Court's

24   determination.

1    The evidence, as discussed in detail above, indicates Allstate opened a claim file on the

2    date of the accident. Allstate obtained the police report, contacted the insurance company for the

3    at-fault-driver, and attempted to locate the driver and owner of the vehicle driven by the at-fault-

4    driver. Allstate was in contact with Shin or Shin's attorney at least every 30 days asking for

5    updates. *See* Dkt. 28-1 at 15. Shin, or his attorney, informed Allstate that Shin would contact

6    Allstate when he was ready regarding both medical and property claims. Allstate paid $10,000 in

7    PIP for medical bills tendered to Allstate through October 3, 2019. Allstate also paid for the

8    repairs to Shin's vehicle. When Shin indicated the accident caused injuries that required back

9    surgery, the evidence shows Allstate increased the claim reserve to $165,000 and obtained

10   opinions from a medical expert and a biomechanical expert.

11   Dr. Masini, Allstate's medical expert, did not find a causal relationship between the

12   collision and Shin's injuries. However, Dr. Jenson, Shin's treating chiropractor, opined that the

13   collision caused Shin's injuries and recommended five weeks of chiropractic care and four

14   weeks of massage therapy and the biomechanical expert determined the accident could

15   potentially cause soft tissue injuries. After consideration of all the information obtained during

16   the investigation, Allstate valued the claim to have a gross value range of $12,835.54-

17   $15,835.50, which included a PIP offset and Hamm fees. Allstate offered Shin $19,277.77 plus

18   Hamm fees, which accounted for five months of treatment for a soft tissue injury and an

19   additional $7,000 in general damages. Based on the evidence before the Court, Allstate has

20   shown it conducted a prompt and reasonable investigation of Shin's claim.

21   Shin claims the offer was unreasonably low given Allstate's description of the offer as a

22   "compromise" and because the reserve was set at $175,000. *See* Dkt. 30. Evidence shows

23   Allstate used the word "compromise" in a voicemail to Shin's counsel when communicating the

24

ORDER ON PARTIAL MOTION FOR SUMMARY
JUDGMENT - 11

1    settlement offer. Shin has not shown this creates a question of material fact. The evidence

2    reflects that Allstate offered Shin a settlement amount that was consistent with its valuation of

3    Shin's claim. Allstate offered Shin $19,277.77 plus *Hamm* fees after valuing the claim at

4    $12,835.54-$15,835.50. Further, Allstate increased the reserve solely on information from Shin's

5    counsel regarding Shin's medical treatments, not based on a valuation of Shin's claim. There is

6    nothing in the record indicating Allstate valued Shin's claim at $175,000 yet offered less than

7    $20,000 to resolve the claim.

8        Shin has not overcome Allstate's showing that there is no genuine issue of material fact

9    regarding whether Allstate's investigation of Shin's claim was reasonable. *See GCG Assocs. LP*

10   *v. Am. Cas. Co. of Reading Pennsylvania*, 2008 WL 3542620, at *10 (W.D. Wash. Aug. 8, 2008)

11   (granting summary judgment and finding the insurer is required to investigate claims in a

12   reasonable manner before determining coverage, but is not required to undertake the most

13   extensive investigation possible).

14       Second, Shin asserts Allstate's failure to effectuate a prompt and equitable settlement

15   constituted bad faith and violated IFCA. Dkt. 30 at 16. Shin states that liability and coverage

16   were "abundantly clear" when Allstate offered a "compromise" settlement. *Id*. He also contends

17   his medical bills exceeded $24,000 at the time of the settlement offer and that Allstate engaged

18   in a fishing expedition to find pre-exiting injuries to "get out of paying fair value" for Shin's

19   claim. *Id*. There is no evidence showing Allstate attempted to place fault for the accident on

20   Shin; rather, the evidence shows Allstate paid for repairs for Shin's property damage and paid

21   $10,000 in PIP. Further, the undisputed evidence shows Allstate conducted a reasonable

22   investigation into Shin's injuries. Shin does not provide sufficient citations to the evidence to

23   support his assertion that the alleged $24,000 in medical bills were solely a result of the accident.

24

1   Shin's arguments are merely speculation, without evidence, that Allstate engaged in a fishing

2   expedition and that $24,000 in medical bills were attributed to the accident. This is not sufficient

3   to show a genuine issue of material fact regarding a bad faith or IFCA claim.

4           Third, Shin asserts that Allstate compelled Shin to initiate litigation when Allstate offered

5   Shin substantially less than the value of his claim. Dkt. 30 at 16. Shin again emphasizes that

6   Allstate valued Shin's claim to be $175,000 or more. *Id.* As the undisputed evidence shows,

7   Allstate valued the claim to be between $12,835.54 and $15,835.50. The reserve was originally

8   set at $10,000 and was increased to $165,000 after Allstate received limited information from

9   Shin's attorney regarding Shin's injuries. The "case reserve was not based on or supported by

10  medical records, medical billing, or expert opinions." Dkt. 33, Andrade Dec., ¶ 9. The Court

11  finds there is no genuine issue of material fact that Allstate offered an amount that was

12  substantially less than its own internal valuation of the claim.

13          Fourth, Shin states Allstate unreasonably denied payment of benefits for Shin's new back

14  injuries and exacerbated pre-existing conditions. Dkt. 30 at 17. Shin argues there are competing

15  medical experts -- Allstate's expert determined the accident did not cause Shin's injuries and

16  Shin's treating providers (Drs. Jensen and Young) concluded that the accident caused Shin to

17  suffer new injuries and exacerbate pre-existing injuries. *Id.* Shin maintains that this fact alone

18  precludes summary judgment. *Id.*

19          The Court finds Shin has not provided an adequate explanation regarding what portions

20  of Drs. Jensen's and Young's opinions contradict Allstate's position on causation and claim

21  valuation. *See* Dkt. 30 at 17. Shin appears to argue that, because Allstate's medical review

22  expert, Dr. Masini, determined the accident did not cause Shin's injuries, Allstate relied on Dr.

23  Masini's opinion and discounted Drs. Jensen's and Young's opinions. However, the record

24

ORDER ON PARTIAL MOTION FOR SUMMARY
JUDGMENT - 13

reflects that Allstate questioned causation and did not outright deny causation; rather, Allstate questioned the extent of Shin's injuries and relied on a reasonable valuation based on the entire claim file.

As previously discussed, the record before the Court shows Allstate conducted a reasonable investigation into Shin's claim. Allstate obtained a medical expert and a biomechanical expert. The biomechanical expert concluded that a rear impact velocity of the magnitude of the collision would be sufficient to produce the potential for soft tissue injuries. Dkt. 28-1. Allstate's medical expert, Dr. Masini, reviewed Shin's treatment history, including Shin's treatment with Drs. Young and Chang, his back surgery, and chiropractic notes from 2019. *See id*. at 26-29. Dr. Masini did not find the documentation supported a causal relationship between the reported injuries and the accident. *Id*. at 30.

After considering the records and opinions available at the time, Allstate determined five months of treatment for soft tissue injuries was appropriate. Allstate did not fail to respond to Shin's demand, nor did Allstate value the claim at zero or conclude there was no causation. Rather, evidence shows Allstate did not find the accident caused the level of injury that Shin alleged. Allstate offered Shin payment for five months of treatment for soft tissue injuries, consistent with the biomechanical expert's opinion that the accident could cause soft tissue injury. Allstate's position was also consistent with Dr. Jensen's initial opinion that Shin needed four to five weeks of massage and chiropractic treatment for injuries caused by the accident. *See* Dkts. 28-1, 31-12.

After Allstate valued the claim, on August 19, 2021, Shin renewed his demand and made it clear Allstate's settlement offer was unacceptable and he intend to file suit. *See* Dkt. 31-13. Shin attached a new opinion from Dr. Jensen that stated Shin's injuries were related to the

1   accident. Dkt. 31-13 at 5. In August 2022, over eight months after Shin filed this lawsuit, Dr.

2   Young opined that the accident "likely irritated things" in Shin's back. Dkt. 31-1 at 9. The

3   Court's inquiry must determine if Allstate's conduct was reasonable based on the information

4   Allstate knew or should have known at the time of the offer. Shin's *post hoc* argument and

5   evidence provided after Shin's demand --which put Allstate on notice the case would be litigated

6   that his injuries are more severe than valued by Allstate -- is irrelevant to this Court's

7   reasonableness determination. The record reflects Allstate did not have access to Dr. Jensen's

8   April 2020 opinion until after Shin sent a demand letter that made it clear this case was going to

9   be litigated. *See Arestad v. Liberty Mut. Fire Ins. Co.*, 2022 WL 17832194, at *3 (W.D. Wash.

10  Dec. 21, 2022). There is no evidence Allstate knew or should have known about Dr. Jensen's

11  new opinion and Dr. Young did not provide her opinion until after this lawsuit had been initiated.

12  Regardless, the opinions only opine that the collision caused a back injury. The evidence does

13  not show Allstate disputes the collision caused a back injury, but shows Allstate and Shin

14  disagree about the extent of the injuries and the value of the claim. Thus, the evidence fails to

15  show Allstate's investigation and offer unreasonably disregarded Shin's new and exacerbated

16  back conditions.

17      Shin also alleges Allstate violated Washington Administrative Code § 284-30-330

18  constituting an IFCA violation. Dkt. 1-1 at 6. The Washington State Supreme Court has made

19  clear that IFCA violations cannot be premised on violations of the WAC. *Hanson v. State Farm*

20  *Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1110, 1116 (W.D. Wash. 2017) (citing *Perez–Crisantos*,

21

22

23

24

1    389 P.3d at 483). Therefore, Shin's IFCA claim for Allstate's alleged violation of the WAC must

2    be dismissed.[5]

3        In sum, the record does not reflect bad faith. This is not a situation where the insurer

4    unreasonably denied payment prior to *any* investigation while relying on mere suspicion or

5    conjecture. *See e.g., McGee-Grant v. Am. Family Mut. Ins.,* 2016 WL 126429, at *4 (W.D.

6    Wash. Jan. 12, 2016) (finding bad faith investigation where insurer denied payment prior to

7    reviewing medical records); *Scanlon v. Life Ins. Co. of N. Am.*, 670 F. Supp. 2d 1181, 1195-96

8    (W.D. Wash. 2009) (holding that insurer conducted a bad faith investigation where it denied the

9    insured's claim by relying upon single doctor's two sentence memorandum, ignoring multiple

10   medical professionals' conflicting conclusions, and failing to further investigate claim); *Aecon*

11   *Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1236-38 (W.D. Wash. 2008) (holding that

12   investigations were not conducted in good faith where insurers did not conduct any investigation

13   and made assumptions without a factual basis before denying claim). Rather, Allstate conducted

14   an investigation and had a factual basis and reasonable justification for the evaluation of Shin's

15   claim. The fact that Allstate did not resolve the claim in the manner requested by Shin does not,

16   alone, render Allstate's investigation and conduct unreasonable. The Court finds no reasonable

17

18   ───────────────

19       [5] As the Court determined Shin's arguments and evidence in support of his bad faith claims are not
     sufficient to overcome Allstate's summary judgment showing, the Court need not further discuss the IFCA bad faith
     claim. However, the Court notes "[a] mere disagreement about the amount of damages based on
20   available evidence cannot ground a claim for failure to investigate." *Aspin v. Allstate Prop. & Cas. Co.*, 2020 WL
     3000514, at *3 (W.D. Wash. June 4, 2020) (internal quotations omitted). Shin has not identified evidence supporting
     an unreasonable denial of payment of benefits beyond Allstate's disagreement with the valuation of Shin's claim.
21   Shin has also failed to provide sufficient evidence to overcome Allstate's showing that Allstate investigated the
     claim and considered all records in the claim file when valuing the claim. Therefore, Shin's IFCA claim fails. *See*
22   *Garrison v. Allstate Insurance Co.*, 2022 WL 1061916 (W.D. Wash. April 8, 2022) (granting summary judgment
     where the plaintiff only showed a disagreement over valuation); *Jelinek v. Am. Nat'l Prop. & Cas. Co.*, 747 F. App'x
23   513, 515 (9th Cir. 2018) ("A delay in payment due to a good-faith dispute over the value of a claim does not amount
     to a denial of benefits under IFCA."); *Aspin*, 2020 WL 3000514 at *3 (finding no IFCA claim where the plaintiff
     failed to offer evidence showing Allstate's investigation was unreasonable or that it ignored evidence the insured
24   provided when valuing the claimed losses).

1    jury could conclude Allstate's conduct regarding Shin's claim was unreasonable, frivolous, or

2    unfounded. Therefore, Shin's bad faith and IFCA claims fail.

3         D.  Consumer Protection Act

4         Shin also alleges Allstate violated the CPA. Dkt. 1-1 at 7. In order to recover under the

5    CPA, a plaintiff must prove "(1) unfair or deceptive act or practice; (2) occurring in trade or

6    commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property;

7    [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105

8    Wash.2d 778, 719 P.2d 531, 533 (1986) (en banc). "Even if incorrect, a reasonable denial of

9    coverage by the insurer is not a violation of the CPA." *Gingrich v. Unigard Sec. Ins.*, 57

10   Wash.App. 424, 788 P.2d 1096, 1102 (1990) (citing *Villella v. Public Employees Mut. Ins. Co.*,

11   106 Wash.2d 806, 725 P.2d 957, 965 (1986)). Unlike an IFCA claim, a CPA claim can be

12   predicated on a violation of WAC § 284–30–330. *Perez–Crisantos*, 389 P.3d at 483 (violation of

13   WAC § 284–30–330 satisfies elements 1 and 2). Like a bad faith claim, a CPA violation turns on

14   the reasonableness of the insurer's actions.

15        Based on the undisputed evidence, viewed in the light most favorable to Shin, Allstate's

16   claims managing was not unreasonable. As discussed in detail above, Allstate investigated Shin's

17   claim, obtained records, including medical and billing records, a medical expert's opinion and a

18   biomechanical expert's opinion and then, considering all the information in the claim file, valued

19   Shin's claim. *See* Dkt. 33, Andrade Dec. There is no evidence Allstate's conduct was

20   unreasonable. Rather, the evidence indicates a dispute regarding the value of the claim. No

21   reasonable juror could conclude Allstate acted unreasonably in its investigation and valuation of

22   Shin's claim. Therefore, the Court finds no genuine issue of material fact remains regarding

23   Shin's CPA claim.

24

1

**III.    Conclusion**

2          Based on the record before the Court, no reasonable jury could conclude Allstate's claim

3    handling conduct constituted bad faith or violated IFCA or the CPA. Therefore, the Partial

4    Motion for Summary Judgment (Dkt. 27) is granted and Shin's bad faith, IFCA, and CPA claims

5    are dismissed with prejudice.

6          Dated this 14th day of June, 2023.

7

8                                                    _____
                                                     David W. Christel
9                                                    Chief United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24